[No. 3,287.]

## JOHN T. BARRY *v.* HENRY W. BENNETT, BENJAMIN W. OWENS, AND JAMES F. REILLY.

FRAUD IN THE PURCHASE OF LAND.—If A. represents to B. that he has obtained from the owner the privilege of buying a tract of land at a given sum, and wishes B. to join with him in the purchase at that sum, and induces B. to thus join him, when in fact A. has the right to purchase at a much less sum, and A. procures B.'s note and mortgage for the difference between the real sum paid and the sum as represented to B. that he had paid, the transaction is a fraud on B., and a Court of equity will not grant A. any relief on the note and mortgage he thus obtained.

ABUSE OF JUDICIAL DISCRETION ON RECALLING WITNESS.—When the defendant has called and examined a witness and rested, and the plaintiff has introduced rebutting testimony, it is an abuse of the discretion of the Court to refuse to allow the defendant to reëxamine the witness, if his counsel state that the fact that the witness would testify to certain material matters has come to their knowledge since the close of defendant's case, and if the recalling of the witness will work no surprise on plaintiff.

APPEAL from the District Court of the Fourth Judicial District, City and County of San Francisco.

This suit was brought to enforce a mortgage given to secure the following promissory note:

"$2,641 $\frac{87}{100}$.

"SAN FRANCISCO, March 12th, 1869.

"Two years after date, for value received, we jointly and severally promise to pay John T. Barry or order, the sum of twenty-six hundred and forty-one and eighty-seven one hundredths dollars, in gold coin of the United States, with interest from date until paid at the rate of ten per cent per

annum, payable monthly, in the like gold coin; the right reserved to pay said principal and interest at any time before maturity.   This note secured by mortgage duly stamped.

> " B. W. OWENS,
> " HENRY W. BENNETT,
> " JAMES F. REILLY,
> " RICHARD BRAINARD."

Frank Soulé had a tract of land in the City and County of San Francisco for sale, being a portion of the McHenry ranch, and containing sixteen and a half acres.   He gave one Dixon the right to negotiate the sale of the land at the price of six thousand two hundred dollars, without any commissions.   Dixon employed one O'Malley as a sub-broker. O'Malley offered the land to the plaintiff, Barry, for four hundred and sixty-two dollars and fifty cents per acre, or seven thousand four hundred and twenty-three dollars and twenty-five cents.   Barry paid him a deposit of one hundred dollars, and was to have time to examine the title and complete the purchase.   This was the 18th or 19th of February, 1869.   Barry soon after arranged with Brainard that Brainard should by March 19th, 1868, get him eleven thousand eight hundred dollars for the land, and Barry was to give him one eighth interest in the property for doing so.   Brainard saw the defendants Bennett, Owens, and Reilly, and represented to them that the land was for sale, and that the owner asked eleven thousand eight hundred dollars for it, and that he was desirous of forming a company to buy it at that price, and that he would take one fourth himself, and induced them to each take one fourth at the price—eleven thousand eight hundred dollars.   The parties paid in cash to Barry enough to amount to the price asked by Soulé, and Dixon's commissions.   Barry was cognizant of what Brainard did, and it was understood between Brainard and Barry that they should each own one

eighth. Neither Soulé nor Dixon appear to have known of the representations of Brainard to Bennett, Owens, and Reilly.

Neither Soulé nor Dixon had any conversation with Bennett, Owens, or Reilly, and when the deed was to be executed by Soulé, Barry asked him to put in eleven thousand eight hundred dollars as the consideration, which he consented to do. The property was deeded to Barry, Brainard, Bennett, Owens, and Reilly, jointly. Barry represented to the defendants that he stood in the place of Soulé, and was entitled to receive the notes and mortgage for the surplus over what was paid down, and they then gave him two notes—one payable in one year, for two thousand six hundred and forty-one dollars and eighty-eight cents, and the one in suit, for the same sum. Brainard also signed the notes. A mortgage was given to Barry to secure the notes. The first note was paid, and this suit was brought to enforce the mortgage for the amount due on the second. The plaintiff introduced the note in evidence, and rested. The defendants, among other witnesses, examined Dixon, and rested. The plaintiff offered rebutting testimony, after which the defendants' attorney asked leave to recall Dixon and question him concerning a communication made by Barry to him during the time the sale was being consummated, and stated to the Court that it was a matter which had come to his knowledge since the defendant had closed his testimony. The plaintiff's attorney objected, because the defendants had already questioned Dixon concerning his conversation with Barry, and the Court sustained the objection.

The plaintiff recovered judgment in the Court below and the defendants appealed.

The other facts are stated in the opinion.

*Cowles & Drown*, for Appellants, argued that the parties were partners in the purchase, and that their relations required perfect good faith, and cited Parsons on Part., 223, 225; Kerr on Fraud and Mistake (Bump's notes), 150; *Hunt* v. *Moore*, 2 Barr. 108; *Belden* v. *Henriquez*, 8 Cal. 88; *Jenkins* v. *Frink*, 30 Cal. 593, and *Case* v. *Codding*, 38 Cal. 193. He also argued that Brainard was Barry's agent, and Barry was responsible for his acts, and cited Kerr on Fraud, *supra*, 111; *Elwell* v. *Chamberlin*, 31 N. Y. 619; *Fitzsimmons* v. *Joslin*, 21 Vt. 144; and that the indebtedness between the parties must be adjusted, and cited *Mack* v. *Wetzlar*, 39 Cal. 247; *Willink* v. *Vanderveer*, 1 Barb. 599, and Hilliard on Mortgages, Vol. 1, pp. 216, 242, 447.

*J. P. Hoge*, for Respondent, argued that it was a case of conflict of testimony, and that the facts of the case brought it within the rule laid down in *Fratt* v. *Fiske & Loring*, 17 Cal. 384, and that under the circumstances of the case, as proved, it was too late to raise the question of fraud alleged, even if the facts themselves constituted fraud.

By the COURT:

The principal question made below at the trial was a question of fraud. The defendants allege that the plaintiff and one Brainard (confederating with him) represented to the defendants that the plaintiff had the refusal of a certain tract of land in the City and County of San Francisco, owned by one Frank Soulé, at eleven thousand eight hundred dollars, and induced them to unite with plaintiff and Brainard in its purchase at that price. It appears, however, that in fact the plaintiff, at the time, had the refusal of the land for a much less sum of money—a little more than six thousand dollars, besides broker's charges. The defendants entered into the purchase, receiving the deed of Soulé run

ning to the plaintiff and to Brainard and the defendants as
grantees therein, which deed falsely recited the consideration
to be eleven thousand eight hundred dollars, instead of six
thousand two hundred dollars, which was its true considera-
tion—the latter sum being the whole of the purchase price
actually received or to be received by Soulé. The note in
suit given by the defendants to Barry represents a portion of
the difference between the eleven thousand eight hundred
dollars and the six thousand two hundred dollars. The note
was executed to the plaintiff by the defendants and Brain-
ard as joint makers, on account of the unpaid balance of the
purchase money; it is not now denied, however, that its
execution and delivery, so far as Brainard was concerned,
was a mere pretense and a sham, for it was secretly agreed
between Barry and Brainard, at the time of its execution,
that the latter was not to pay anything thereon, but was to
be absolutely released therefrom. In some two or three
weeks afterwards, Barry and Brainard pretended to the de-
fendants that Brainard, "having money lying idle," was
desirous of immediately paying his purported one quarter of
the sum named in the note, and asking and obtaining their
consent to his doing so, and their stipulation that the note
and the mortgage lien by which it was secured should con-
tinue for the unpaid balance. It so turns out that nothing
whatever was paid or to be paid by Brainard on the note,
but that he was released therefrom in pursuance of an agree-
ment between him and Barry, made antecedent to the exe-
cution of the note, by which agreement Brainard was to
pay nothing, but was to have the undivided one eighth of
the premises for his services to Barry in the transaction.
The evidence is all one way on this point—mere evasive
replies or faint negations upon the part of the plaintiff and
others concerned with him in the transaction to questions
put to them as witnesses, go but a little ways towards mak-
ing up a conflict in the evidence—and Barry himself, when

testifying as a witness, distinctly admits that Brainard paid nothing and was to pay nothing, and that he promised him a release if he would sign the note and mortgage along with the defendants, which, it ought to be observed, is a somewhat remarkable admission for him, in view of the allegations found in his verified complaint filed in this case, in which it is directly averred and set forth that Brainard did pay to him a sum of money upon this note—the precise amount of that sum, even to a single cent, being stated— "in satisfaction of his undivided one eighth part of said indebtedness." He must have considered either the verification of the complaint or the oath administered to him in the presence of the Court as a witness—the one or the other—to have been somewhat a mere formality. We will not stop, however, to point out the numerous facts, admitted in some instances, in the other instances proven beyond controversy, which characterize the transaction as a bald fraud perpetrated by Barry and Brainard upon the defendants, and one totally unfit to become the foundation for relief at the hands of a Court of equity.

We are of opinion, too, that when the counsel for the defendants desired to recall Dixon, who had acted as the broker of Soulé, and prove by him the fact that Barry had requested him to keep the defendants apart from Soulé while the transaction was being consummated, he should have been permitted to do so. It was stated to the Court below in connection with the offer by counsel incapable of attempting to mislead the Court, that this fact had come to their knowledge for the first time since the close of the defendants' case in chief, and under the circumstances, the evidence at the trial not having been concluded and it not being pretended that it would work a surprise upon the plaintiff, we think that the Court should have allowed Dixon to be recalled.

Judgment and order denying a new trial reversed, and cause remanded for a new trial.