### L. H. PADDOCK v. E. F. BRAY.

#### Decided June 28, 1905.

**1.—Cancellation of Deed—Tender of Consideration—Joint Purchasers.**

Plaintiff, seeking cancellation of deeds made to defendant in settlement of his supposed interest in property which they had purchased jointly, on the ground that defendant had no interest therein because he had, under secret contracts with the seller, received back from him part of the purchase price, for making the sale, which he had negotiated by representing that the property could not be had for less and. inducing plaintiff to make the purchase with him, was not bound to tender back the part of the consideration paid by defendant, where the latter had already got, out of the transaction, under such secret agreement, all he had paid, or more.

**2.—Same—Fiduciary Relation.**

The relation of joint purchasers is fiduciary, and one will not be permitted to acquire a secret advantage in the purchase over his associates.

**3.—Fraud—Representations of Fact.**

A representation, made as an inducement to plaintiff to enter into a joint purchase of property with defendant, that it could not be had for less than a certain sum, when defendant knew that it could be bought for less and had an agreement with the seller to pay him back the difference for making the sale, was a material misrepresentation of existing facts, and not of mere opinion.

**4.—Question of Fact—Peremptory Instruction.**

Plaintiff's right to recover being dependent on his claim that defendant was a joint purchaser with him of certain property, and therefore standing in a fiduciary relation, which he had abused by secret agreements with the seller, a peremptory instruction to find for the plaintiff was unwarranted where the evidence was sufficient to raise an issue as to whether he purchased for himself alone, or jointly with defendant, which it is here held to do.

Appeal from the District Court of Lamar County. Tried below before Hon. T: D. Montrose.

*Hale, Allen & Dohoney,* for appellant.—The alleged false and fraudulent representations, viz: That appellant told appellee that he had talked with Richards, and that he would not sell for less than $5,000, and that there would be a profit in the property at that price, and that

he had sent a messenger to Collin & Dulaney and they would not sell for less than $2,000, are mere statements of opinions concerning future matters and transactions, and not such representations of existing facts as will constitute a cause of action for deceit; especially when appellee dealt with the sellers himself, knew the property and bought it on his own judgment, and does not show that it was not worth the price paid, or that any injury resulted. Calhoun v. Quinn, 21 S. W. Rep., 705; Blythe v. Speake, 23 Texas, 435; Lemon v. Hanley, 28 Texas, 225; Jackson v. Stockbridge, 29 Texas, 398; Bishop's Con. Law, secs. 324, 325, 334; Pollock on Torts, secs. 276, 277.

Appellant had a right to make the contracts alleged, with Richards and Collins & Delaney, for commissions for selling their property, and his failure to disclose same to appellee constitutes no cause of action, in view of the fact that appellee dealt with the owners himself in buying; knew the property; bought it on his own judgment; got what he bought, and does not show that it was not worth the price paid, or that any injury or damage resulted, and consequently the alleged concealments are of facts wholly immaterial to appellee. Kilbourn v. Sunderland, 130 U. S., 517. ·

If appellee's petition shows any such fiduciary relation between himself and appellant, by reason of their agreement to become joint owners of the Richards and Collins & Dulaney lots, as would require appellant to disclose his contracts and relations with the sellers, then this would not entitle appellee to rescind and recover the property in controversy, but would only entitle him to require appellant to account for an interest in the profits, or commission received by him from the sellers.

Appellee's petition does not show that he is entitled to recover in that he does not offer to do equity by returning the money shown to have been paid to him by appellant.

The court erred in overruling defendant's first special exception to that part of the first and sixth paragraphs of said petition, alleging certain false representations, because such representations, to· wit, that Richards would not take less than $5,000 for his property, and that the property could be sold at an early date for a good profit, and that Collins & Dulaney would not take less than $2,000, are mere opinions, and not statements of past facts or transactions, and plaintiff's petition shows that in buying the property he dealt with the owners of the property himself, and bought on his own judgment.

The court erred in overruling defendant's second special exception to the third paragraph of said petition, because said paragraph states no cause of action, and the concealment alleged is not of material facts; that is, that defendant had a contract with Richards by which he was to receive as a commission all ·the property should be sold for over $3,500, which defendant failed to disclose to plaintiff, it appearing from said petition that plaintiff bought said lot from the owners on his own judgment and got what he bought, and it not appearing that any injury resulted from such concealment.

The court erred in overruling defendant's third special exception to the sixth, seventh and eighth paragraphs of said petition, because they show no cause of action, and that part of the eighth paragraph that alleges fraudulent concealments, because the alleged concealment is not

of material facts; that is, that defendant had a contract with Collins & Dulaney by which he was to receive, as a commission for selling the property, all it should bring over $1,500, which defendant failed to disclose to plaintiff, it appearing from said petition that plaintiff dealt with the owners of said property himself in buying the same; bought on his own judgment; got what he bought, and it not appearing that any injury resulted from such concealments.

If appellee bought the Richards and Collins & Dulaney property for himself alone, and not for himself and appellant, in violation of their contract, then he is not entitled to recover by reason of the alleged representations and concealments. The evidence on this question being conflicting, it was error for the court to instruct a verdict for appellee.

The alleged representations and concealments, on the part of appellant, afford no cause of action in the absence of some relation imposing trust and confidence, and the undisputed evidence shows that appellee, in buying the Richards and Collins & Dulaney lots, bought them for himself, and not in pursuance of the agreement with appellant to buy jointly.

*Burdett & Connor*, for appellee.—This was not action for deceit, but for cancellation of the two deeds made to appellant by appellee, on the ground that they were executed without consideration; and the allegations in the first amended petition show clearly that no consideration was paid to appellee for said deeds.

It was not necessary to tender back any money to appellant, since the allegations clearly show that appellant received from Collins & Dulaney five hundred dollars of the money paid to them by appellee, and that appellant received back from Richards the same check for fifteen hundred dollars which he had delivered to appellee for the purchase price of his share of the Richards lot, and that appellant only paid to appellee three hundred dollars of the money received by him from Collins & Dulaney. Hall v. Grayson County Nat. Bank, 10 Texas Ct. Rep., 939, and authorities there cited; Cohen v. Adams, 13 Texas Civ. App., 118; Story's Equity, secs. 190b, 191, 192, 193.

The court did not err in instructing a verdict for appellee, since the undisputed evidence shows an agreement made between appellant and appellee that appellant was to pay a part of the purchase price for each of the lots, and was to own an interest in each, and that he claimed an interest in them at the time the deeds sought to be canceled were made, when in fact he had paid no part of the purchase price of either of them, and owned no interest therein; and his supposed interest in the Richards and Collins & Dulaney lots was the only consideration for said deeds. Same authorities.

EIDSON, Associate Justice.—This suit was brought in the court below by appellee against appellant to cancel two deeds executed by him to appellant, upon the ground that they were executed without consideration. Appellee in his petition alleged, in substance, that appellant proposed to him that they jointly buy a certain piece of property in Paris, Texas, known as the Richards Hotel, stating that he had a talk with Richards, the owner, and that he would sell for $5,000, but that

he would not take less, and that there would be a profit in the property at that price, and proposing that he would pay $1,500 of the purchase price and appellee the balance, they to own the property in those proportions, the deed to be taken in appellee's name. That appellee accepted said proposition, and it was agreed that he should buy the lot from Richards at $5,000, provided it could not be bought cheaper; that on November 6, 1903, appellee bought said lot for $5,000, $1,500 of which had been furnished by appellant, and took the deed in his name, the consideration being $1,500 cash, and vendor's lien notes for $3,500; that, at the time of the agreement between them to jointly purchase said property, appellant, unknown to appellee, had a contract with Richards by which he was to sell the property for him, and receive as a commission all he should sell for over $3,500, which was concealed from appellee, and that Richards had promised appellant that he would not sell for less than $5,000 to any person appellant should send to him to buy; that after the purchase of the Richards property appellee, still not knowing of the relations and contracts between appellant and Richards, and relying on appellant's statements, made a settlement with him, by which he paid appellant $2,000 for his supposed interest in said Richards property, giving appellant his note for $600, and making him a deed to the first lot in controversy at a valuation of $1,400; that after the consummation of the trade with Richards, appellant was paid by Richards $1,500 of the money paid Richards by appellee; that afterwards, on the —— day of November, 1903, appellant told appellee that they could buy a lot from Collins & Dulaney, situated just across the street from the Richards property, for $2,000, and proposed that they buy the lot jointly, appellant to pay $500 of the purchase price and appellee the balance, the price to be $2,000, to which appellee agreed; that appellant stated that he had sent a messenger to Collins & Dulaney, and $2,000 was the least they would sell for. It was agreed that appellee should buy the lot and take the deed in his own name, or the name of some other person; that at the time of this agreement appellant had a contract with Collins & Dulaney by which he was to sell said lot for them and receive as commission all he should get over $1,500, and that Collins & Dulaney had agreed with him that they would not sell for less than $2,000 to any person appellant should send to them. That, in pursuance of said agreement, appellee bought said lot from Collins & Dulaney, and had the deed made to one Charles N. Priddy, paying therefor $1,000 in cash and Priddy's note, secured by vendor's lien, for $1,000, which said note was endorsed by appellee; that said Collins & Dulaney paid over to appellant $500 of the amount paid to them by appellee for said lot; that on November 28, 1903, appellee still not knowing that appellant was Collins & Dulaney's agent, and of the aforesaid agreements between him and them, had a settlement with appellant, by which he deeded him the second lot in controversy in consideration of appellant's profit in the Collins & Dulaney lot, which was agreed to be $400, the surrender of the aforesaid note for $600 and $300 in cash paid by appellant.

Appellant answered by general demurrer, special exceptions and general denial. Appellant's demurrers and exceptions were overruled.

The case was tried before a jury, and the court instructed the jury

peremptorily to find for plaintiff, and judgment was rendered as prayed for upon the verdict so found by the jury.

Appellant's first and fifth assignments of error, which are submitted together, complain of the action of the court below in overruling his general demurrer to appellee's first amended original petition, and his fourth special exception to said petition, which sets up that the same is insufficient in law, in that the prayer of said petition for cancellation of the deeds and rescission of contracts alleged in said petition does not entitle appellee to such relief, because he does not tender back the money shown to have been paid him by appellant. The relation of joint purchasers of property is fiduciary, in the same general sense as is that of an agent dealing with his principal, and one will not be permitted to acquire a secret advantage in the purchase over his associates. (1 Bigelow on Frauds, sec. 315.) If it is true, as alleged by appellee, that he agreed with appellant to purchase jointly with him the Richards and Collins & Dulaney property, relying upon the representations of appellant that the former could not be purchased for less than $5,000, and the latter for less than $2,000, and that at the time appellant had, unknown to appellee, a secret agreement and understanding with the respective owners of such property, whereby he was authorized to sell the Richards property at $3,500 and the Collins & Dulaney property at $1,500, and to retain for himself all over such amounts, and the joint purchases of the two tracts were made at the respective prices represented by appellant, and appellant, unknown to appellee, received from the respective vendors the excess over the prices at which he was authorized to sell said property; and appellee, in consideration of the supposed interest of appellant in the property jointly purchased, based upon the supposed payment by appellant of the amount agreed to be paid by him in the joint purchase of said property, conveyed to him the property the deeds to which are sought to be canceled by this suit, appellant having paid nothing for such property, appellee would be entitled to a cancellation of said deeds. Appellant's fiduciary relation to appellee would not permit him to acquire an interest in the property by virtue of the payment by appellee of the entire amount for which he, appellant, was authorized to sell the property. As to appellant, there was no consideration upon which to base an acquisition of any interest in the property. (King v. Wise, 43 Cal., 629; Barry v. Bennett, 45 Cal., 80; Willink v. Vanderveer, 1 Barber, 599; Yoeman v. Lasley, 40 Ohio St., 190; Hodge v. Twitchell, 33 Minn., 389.)

Appellee alleged that Collins & Dulaney paid to appellant $500 of the $2,000 paid them by appellee, and that appellant had paid to appellee only $300, in part payment of the consideration of one of the tracts of land, the deed to which is sought to be canceled in this suit. This, in connection with other allegations of appellee's petition, shows that appellant, after returning to appellee the property involved in this suit, will have a profit of $200 out of the transaction. Hence it is clear that it was not necessary for appellee to tender back any money to appellant. We are of the opinion that appellee's petition states a good cause of action, and is not subject to the general demurrer or fourth special exception addressed thereto by appellant.

Appellant's second, third and fourth assignments of error are over-ruled. The allegations in appellee's petition that appellant represented that Richards would not take less than $5,000 for his property, and that Collins & Dulaney would not take less than $2,000 for their property, are allegations of representations of present existing facts at the time the representations were made, and such facts were material to the matter of the joint purchase being then proposed by appellant, and appellee was justified in relying upon such representations being true. In view of the fiduciary relation between appellant and appellee, as joint purchasers of the property, the fact that appellant had an agreement with the owners of the property that he should have the amount for which the property sold over the price at which he was authorized to sell same, was a material fact, and its concealment was the concealment of a material fact.

Appellant's eighth assignment of error complains of the action of the court below in instructing the jury peremptorily to find for the plaintiff, because the evidence is conflicting as to whether plaintiff bought the Richards lot and the Collins & Dulaney lot for himself and defendant, or for himself alone. When the evidence is sufficient to raise an issue, it must be submitted to the jury, the trial being before a jury. If appellee bought the Richards and Collins & Dulaney property, or either parcel, for himself alone, and not for himself and appellant jointly, in pursuance of the alleged agreement, then there was no fiduciary relation existing between him and appellant in the purchase of said property or such parcel thereof, upon which he could hold appellant bound by or responsible for the alleged representations and concealments. Without intimating any opinion as to the weight to be given to the testimony, raising the question as to whether appellee bought said property, or either parcel thereof, for himself alone, or for himself and appellant jointly, we are of the opinion that there is testimony in the record raising that issue, and that same should have been submitted to the jury.

The appellant, after testifying that Richards held his property at $3,500, and that he had an understanding with him that he could have all over $3,500 that he could sell the property for, and that Richards would not quote the property to a buyer sent to him by appellant at less than $5,000, testified as follows: "Shortly after that I saw Mr. Bray, and asked him if he was still thinking of buying the Richards property, and proposed that we go in together and buy it; that I would pay $1,500, if he would pay the balance, and we could own it in the proportions paid by each. He agreed to this, and it was agreed that he should do the buying, and buy it at the best price he could. I told him if he bought it to take the deed in the name of Bray and Paddock, which he agreed to do. The agreement was that it was to be a cash transaction, each party to pay his part. Bray did not say anything to me about making a note for his part of the purchase money and encumbering the whole property with a vendor's lien. I gave Bray a check for $1,500 and he went and made the trade. Before he closed it, however, he came back and said Richards wanted $6,000, and afterwards told me that he had to pay $5,500 for it. I found out from Richards that Bray had bought it for $5,000, and taken the deed in his own

name, and left me out, and that he had encumbered the whole property for $3,500. I went to Bray and told him I wanted some showing for my money, that he had used my money and taken the deed in his own name—had not paid anything himself, but had encumbered the whole property with a lien for $3,500, which was not in accordance with our agreement. He said he took the deed in his own name because he thought he could handle it to better advantage, as I was agent for the railroad company. He then offered to give me something on the outside. I asked him what he had, and he mentioned this property on North Main Street. I asked him what he would take for the house and lot, and he said $1,400. I went and looked, and told him I thought $1,000 would be a big price for it. We then agreed on that price and made a settlement. We figured that I was entitled to a profit of $100 on my $1,500, which would make him due me $1,600. In settlement of this he made me a deed to the North Main Street property, and gave me his note for $600 due in six months."

Appellant, after testifying that Collins & Dulaney held their property at $1,500, and had given him an option on same at that amount, and agreed not to quote the price to a buyer sent them by him at less than $2,000, testified as follows:

"I then saw Bray, and told him about the Collins & Dulaney lot, and proposed that we buy it together—that I would put in $500 if he would put in the balance, and we would own it in the proportions paid by each. He agreed to this. We agreed that Bray should go to them and do the buying, and buy at the lowest figure he could. This was to be a cash transaction, and each was to pay the money for his part. Nothing was said about buying it partly on time and encumbering the property with a vendor's lien for $1,000. I saw Bray two or three times after this and asked him about the trade for the Collins & Dulaney lot, and he said he could not buy it—that they wanted $2,500 for the lot. In the meantime I saw Mr. Collins, and he first told me that they had agreed on a trade, and that Bray had put up $100 to bind it pending an investigation by him of the title. Afterwards Bray, having again told me that he had not bought the property, and could not buy it, I went to Mr. Collins and asked him about it, and he said the trade was closed; that Bray paid them $1,000 cash, had the deed made to one Priddy, and Priddy made a note for $1,000, which Bray had also signed, and that Mr. E. S. Connor had taken up the note; they paid me $500, as per our contract. I don't know Priddy, had never heard of him, and certainly was not willing to have my property in his name. I went to Bray and asked him why he had left me out on this deal, and he said that he had to pay $2,500 for the property, and he did not think I wanted in at that figure. As he had encumbered the property for $1,000, and had not bought it according to our agreement, I did not insist on claiming an interest in the Collins & Dulaney lot. I had tried to sell Bray's note for $600 that I had, and had failed to do so. In order to get this note paid I proposed to Bray to buy another lot he owned on North Main Street, adjoining the first one that I had already bought from him. I asked him what he would take for it, and he first asked me $1,000. I offered him $900, to be paid by surrendering his note for $600 and paying him $300 in cash, and we traded on that

basis. I gave him his note and paid him $300, and he made the deed to me."

We are of the opinion that the testimony of appellant quoted raised the issue above mentioned, and thereby created a conflict in the testimony as to the right of appellee to recover; and that, therefore, the case should have been submitted to the jury under appropriate instructions upon the issues raised by the pleadings and the evidence of· both parties. (Wallace v. Southern Cotton Oil· Co., 91 Texas, 18; Lee v. International & G. N. Ry. Co., 89 Texas, 588;·Johnston v. Drought, 22 S. W. Rep., 290; Royall v. Gulf, C. & S. F. Ry. Co., 32 S. W. Rep., 186.)

For the error pointed out, the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*