H. V. WOODSON et al., Appellant,

v.

Chester L. TYRA and Billy R. Tyra, Individually and d/b/a Tyra & Tyra, Appellees.

No. 6239.

Court of Civil Appeals of Texas, El Paso.

Oct. 11, 1972.

Rehearing Denied Nov. 8, 1972.

Lynch, Chappell, Allday & Culp, Randall Lundy, Midland, for appellants.

Garland Casebier, Midland, Lawrence L. Fuller, Monahans, for appellees.

## OPINION

PRESLAR, Justice.

This is a suit brought by Appellants, H. V. Woodson and D. K. Coffman, against Appellees, Chester L. Tyra and Billy R. Tyra, alleging an oral agreement under which the four would engage in a joint venture in acquiring and developing certain oil and gas leases and the turning of same for a profit to Mt. Carmel Drilling Company; it was further alleged that all participated in the venture to its completion, that a confidential relationship arose thereby, and that the Tyras had refused to account for any profits and had refused to convey to the Appellants-Plaintiffs an interest in a portion of the leases; that the Defendants-Appellees had been named operators of the leases and had refused to account to the Appellants-Plaintiffs for their share of the production; an accounting was prayed

for, a money judgment for any profits, and the imposition of a constructive trust on their portion of the leasehold interests earned by the venture. The Defendants-Appellees specially plead the Statute of Frauds, Art. 3995a, V.A.T.C.S., now Sec. 26.01, Tex.Bus. & Commerce Code, V.T.C.A., and the Texas Trust Act, Art. 7425b–7, Vernon's Ann.Tex.Civ.St. At the conclusion of all of the evidence, the Court instructed a verdict for the Defendants-Appellees, and it is from such judgment that this appeal is taken. We are of the opinion that the Court erred in directing a verdict for the Defendants and that the cause must be remanded for another trial.

The parties will be referred to by their names, or as Plaintiffs and Defendants. H. V. Woodson resides in Illinois, D. K. Coffman is a Geologist of Midland, Texas, and the Tyras are brothers operating as a partnership in oil production in Midland, Texas. The events began June 18, 1968, when Woodson wrote Billy Tyra that he knew of some "development money" for financing oil or gas property with a "long slow payout," and that if Tyra knew of any such property, "You and I could make something too." The Tyras then contacted the geologist, Coffman, and he told them about the property here involved. This was some time in June, 1968, and Coffman testified that the deal as stated by the Tyras at that time was that if some kind of deal could be worked up on that acreage they would share in it one-fourth each in whatever they could make out of it. Leases were obtained on Sections 1212 and the West one-half of Section 1211, and a deal was made with Mt. Carmel to drill six wells on this acreage for $120,000.00 per well and the retention of ⅛th of the working interest. The leases were taken in the name of Chester Tyra, the six wells were drilled and completed, paid for by Mt. Carmel, and the leases were then assigned to Mt. Carmel with Chester Tyra retaining the ⅛th interest. He subsequently assigned to each Plaintiff ¼th of that interest in Section 1212, and this suit is to impose a constructive trust and to compel an assignment as to Section 1211, for an accounting for profits, if any, arising from the drilling of the six wells, and an accounting for the plaintiffs' share of the production. By stipulation of the parties, the actual accounting phase of the case was reserved pending a determination of the liability question.

The basis of the directed verdict was set forth by the Court in the judgment as being:

"   .   .   .   the Court is of the opinion that there is no competent evidence upon which the jury could find that there was a prior or pre-existing fiduciary or confidential relationship between either of the plaintiffs and the defendants, and that, as a matter of law, the defendants are entitled to judgment,  .   .   . "

In reaching that decision, the Court was no doubt applying the rule announced in Consolidated Gas & Equipment Company of America v. Thompson et al., 405 S.W.2d 333 (Tex.Sup.1966), urged upon the Court by Appellees in their motion for directed verdict, and urged now in support of the judgment. In that case it was held

"that for a constructive trust to arise there must be a fiduciary relationship before, and apart from, the agreement made the basis of the suit."

Following that, the Court, speaking through Justice Greenhill, went on to say:

"The usual cases of fiduciary relationship have been attorney-and-client, partners, close family relationships such as that of parent-and-child, and joint adventurers, particularly when there is an agreement among the joint adventurers to share financial gains and losses. This Court in Gaines v. Hamman, [163 Tex. 618, 358 S.W.2d 557] supra, as well as in Thigpen v. Locke, [363 S.W.2d 247 (Tex.1962)] supra, recognized that a fiduciary relationship could arise outside of those relationships listed above when, over a long period of time, the parties had worked together for the joint acqui-

sition and development of property previous to the particular agreement sought to be enforced. The proof in this case simply does not show such a relationship of the parties as to come within the exceptions recognized in the *Gaines* and *Thigpen* opinions. There is no constructive trust.

The case here presented is one for breach of contract to convey an interest in realty."

The facts upon which that decision was made were that two of the plaintiffs, named Griffith, went to one Newman, president of the defendant corporation, and told him they knew of an unleased section of land. They testified to an oral agreement with Newman to this effect: Griffith would tell Newman where the land was, and would permit the company's geologists to check it. If Newman wanted it, Griffith would obtain the lease and assign it to the defendant corporation, with Griffith retaining a ⅟₁₆th overriding royalty. Griffith got one Thompson to obtain the lease, for a share of the ⅟₁₆th royalty. The lease was taken in the name of the corporation, and the suit was brought to enforce the oral agreement for the ⅟₁₆th royalty. (Taking the lease in the name of the corporation was not an issue.) As to trust and confidence, one of the Griffiths said that he had some previous dealings with Newman and had all the confidence in the world in him, and the other Griffith said he trusted him.

We do not think that the Court's holding on that set of facts is controlling here. A theory of recovery relied on by Plaintiffs in the case before us is that of a joint venture. We are of the opinion that if in fact the parties were engaged in a joint venture, then the plaintiffs are entitled to recover. Whether or not that relationship existed is a question which the plaintiffs are entitled to have determined on another trial. Recovery under that theory is not foreclosed by the *Consolidated Gas* case. A joint venture has been de-

scribed as a limited or special partnership engaged in the joint prosecution of a particular transaction for mutual benefit or profit. Holcombe et al. v. Lorino, 124 Tex. 446, 79 S.W.2d 307 (1935). Each joint adventurer stands in a fiduciary relationship toward the other, and each has the right to demand and expect the utmost good faith from his associates in all that relates to their common interests. Fitz-Gerald v. Hull, et al., 150 Tex. 39, 237 S.W.2d 256 (1951); Whatley v. Cato Oil Co., Inc., et al., 115 S.W.2d 1205 (Tex. Civ.App.1938, n. w. h.). In Omohundro v. Matthews et al., 161 Tex. 367, 341 S.W.2d 401 (1960), it is said:

"In the cases of Omohundro and Fitz-Gerald, the parties were joint adventurers and both were in a confidential relationship. The duty in each instance is that the property be acquired for mutual profit and advantage."

If our parties were engaged in a joint venture, then they stood in a fiduciary relationship, and the Plaintiffs were thereby entitled to have the constructive trust enforced for violation of the fiduciary duty and to prevent the unjust enrichment of the Tyras. *Consolidated Gas* did not change that rule of law, but in fact recognized joint ventures as one of the "usual cases of fiduciary relationship." The Court was there concerned with a case which it characterized as "one for breach of contract to convey an interest in realty." The case before us cannot be so characterized, for the parties plead and offered evidence that they were working together in a common enterprise for mutual profit —whatever it might be. The acquisition of any specific realty was not the object of their efforts in the beginning. As one witness said, they did not know whether they would come out with "money, marbles, chalk, or bubble-gum." As indicated, we are of the opinion that the fact of a joint venture would take this case out of the holding of *Consolidated Gas,* but if in such a case there must still be a fiduciary relationship, before, and apart from, the

agreement made the basis of the suit, then that requirement is satisfied. For, the venture originated in June and the parties were engaged in it from that time on so that a fiduciary relationship was created and in existence prior to the time that any interest in realty came into the picture. The contract wtih Mt. Carmel, which provided for the interest in realty, was dated October 15th.

■ In this case, the trial judge concluded that the evidence did not raise a question of fact and directed a verdict. In determining whether that action was erroneous, we must follow the familiar rule of considering only the evidence and inferences arising therefrom which tend to establish the fact question. So viewed, the evidence is ample to raise the question of whether or not the parties were engaged in a joint venture. The trial Court erred in now allowing the question to be presented to the jury.

The judgment is reversed and the cause remanded for another trial.