Chester L. TYRA et al., Petitioners,

v.

H. V. WOODSON et al., Respondents.

No. B–3716.

Supreme Court of Texas.

April 18, 1973.

Rehearing Denied June 20, 1973.

**212**

———◆———

Garland Casebier, Midland, Lawrence L. Fuller, Monahans, for petitioners.

Lynch, Chappel, Allday & Aldridge, D. Bruce Pope, and Randall Lundy, Midland, for respondents.

POPE, Justice.

The question presented by this appeal is whether a constructive trust arose out of a single joint venture to acquire certain oil and gas leases. H. V. Woodson and D. K. Coffman sued Chester L. and Billy R. Tyra to establish a constructive trust upon the working interest of the west one-half of Section 1211, L. B. Platt Survey in Reagan County. The trial court granted the defendants' motion for instructed verdict because the court was of the view that the arrangement violated the Statute of Frauds

and the Texas Trust Act. The court of civil appeals reversed the judgment and remanded the cause to the trial court for another trial and for a determination of the disputed facts concerning the existence of a joint venture. 486 S.W.2d 173. We reverse the judgment of the court of civil appeals and affirm that of the trial court.

Plaintiff, Woodson, was living in Illinois in June of 1968. Woodson wrote to Billy Tyra who lived in Midland, Texas, to inquire if he knew of any available mineral property and informed Tyra that he was in touch with some people who had the money to invest in the development of mineral property. Billy Tyra reported these facts to Coffman, who was an independent geologist. Coffman had formerly worked for Billy Tyra, but that employment had terminated due to a misunderstanding. Coffman testified that he told Billy Tyra of some available mineral property and that he and the two Tyra brothers agreed: "if we could work some kind of a deal on this acreage, that we would just all split whatever we could get out of it, a fourth apiece, with Mr. Woodson . . . whatever we could make out of it we would just all split up." Woodson testified to the same effect. There was testimony that Chester Tyra went to Illinois in late July or early August of 1968 where he met Woodson for the first time, and that Woodson then introduced him to the investor. Woodson and his wife testified that Chester Tyra at that time agreed that all four members of the group would share equally in the whole venture including the profits from drilling six wells on the section and one-half of lands. The Tyras denied that the parties ever reached any agreement at all.

After Chester met the investor, the Tyras dealt directly with the investor and in October, 1968, they entered into a written agreement. That same month, Woodson and his wife traveled to Midland to "see what was going on" and to "get a written contract." Woodson and his wife testified that the four concerned persons met and

discussed a written contract, but the Tyras declined to give them one, because one of the Tyras said, "If you can't trust anybody you are in business with, you should not be in business with them in the first place." At the October, 1968, meeting, the parties orally agreed that Woodson and his wife would go to Big Lake, Texas, to live during the drilling operations. There was evidence that Woodson would act as the production man, Coffman would supply the geologic work, Chester Tyra would do the land acquisition work, and Billy Tyra would do the well completion and production work. Both Woodson and Coffman frequently inquired about their share of the well drilling profits and of the working interest. Finally the Tyras executed assignments to Woodson and Coffman of one-fourth of the working interest as to section 1212, but they have refused to execute any assignment as to section 1211.

The court of civil appeals in this case has held that proof of a joint venture, the one sued upon, is itself sufficient evidence of a fiduciary relationship to support a constructive trust and, thus, escapes the prohibitions of an oral contract to convey land. This court held to the contrary in Consolidated Gas & Equipment Co. v. Thompson, 405 S.W.2d 333 (Tex.1966), holding that such agreements violated the Statute of Frauds, Vernon's Ann.Civ.St., Article 3995 and the Texas Trust Act, Vernon's Ann. Civ.St., Article 7425b-7. We there wrote, "Our holdings above cited are to the effect that for a constructive trust to arise there must be a fiduciary relationship before, and apart from, the agreement made the basis of the suit. Such is our holding here. As stated, the fact that one businessman trusts another, and relies upon his promise to carry out a contract, does not create a constructive trust. To hold otherwise would render the Statute of Frauds meaningless."

The trial court properly granted an instructed verdict in favor of the defendants because of the absence of any proof of any prior and separate fiduciary rela-tionship between the plaintiffs and the defendants. We reverse the judgment of the court of civil appeals and affirm that of the trial court.