J. M. NAFTALIS et al., Appellants,

v.

Robert E. RANKIN et al., Appellees.

No. 4938.

Court of Civil Appeals of Texas, Eastland.

Sept. 16, 1976.

Rehearing Denied Nov. 10, 1976.

John P. Camp, Fillmore, Camp & Lee, Fort Worth, for appellants.

Frank L. Jennings, Jennings, Montgomery & Dies, Graham, for appellees.

RALEIGH BROWN, Justice.

Dr. J. M. Naftalis, Dr. R. D. Martin, Gene S. Friedman, and E. F. Lisle sued Robert E. Rankin and the Permian Corporation to (1) impress a constructive trust upon an undivided three-fourths interest in an oil and gas lease upon land situated in Knox County; (2) recover the net income received by

Rankin attributable to the undivided three-fourths interest; and (3) recover from the pipeline company, the Permian Corporation, the money held in suspense.

Plaintiffs alleged that they and defendant, Rankin, became partners in a mining partnership in the Melton lease; that Rankin represented to them that he would obtain an adjoining lease, the Orsak lease, for himself and the plaintiffs at a time when they were partners; that Rankin took the Orsak lease on August 21, 1974, in his name to the exclusion of the plaintiffs; that Rankin, as a Fiduciary, breached a duty to the plaintiffs in doing so, and, therefore, a constructive trust should be imposed upon the Orsak lease in favor of plaintiffs.

Rankin denied the existence of a partnership or that he had a fiduciary relationship with the plaintiffs.

After a jury verdict, judgment was entered against the plaintiffs and in favor of Rankin and the Permian Corporation. Dr. Naftalis, Dr. Martin, Friedman and Lisle appeal. We reverse and render in part and reverse and remand in part.

Appellants argue the trial court erred in overruling their motion for judgment and sustaining Rankin's. It is their contention the evidence established and the jury found a breach of fiduciary duty, and that such findings justified the imposition of a constructive trust on the Orsak lease.

In support of this argument, appellants point to the answers to special issues one and three, which are:

"SPECIAL ISSUE NO. 1.

Do you find from a preponderance of the evidence that in the month of August, 1974, Richard D. Martin, Jerome M. Naftalis, Gene S. Friedman, Tooker Lisle, and Robert Rankin were jointly engaged in the business of operating the Melton lease, sharing income and expenses according to their ownership interests in such lease?

Answer 'We do,' or 'We do not.'

ANSWER: ___We do___."

"SPECIAL ISSUE NO. 3.

Do you find from a preponderance of the evidence that between the time drilling commenced on the Melton lease and August 21, 1974, Robert Rankin represented to any of the plaintiffs that he, Robert Rankin, would obtain the Orsak lease for himself and the plaintiffs?

Answer 'We do' or 'We do not.'

ANSWER: ___We do___."

Rankin testified that he was a petroleum engineer and had approximately twenty years experience in the oil business. He met Dr. Naftalis and after extended negotiations, the parties entered into a contract to drill one well on the Melton lease. After completion of the well, which was a producer, assignments of an undivided one-sixth interest was made to Friedman, Dr. Martin, and Dr. Naftalis. Rankin retained one-quarter interest and one-quarter was assigned to Lisle. A second well was drilled on the Melton lease and each of the owners contributed their proportional part of the costs. Each shared income and expenses in accordance with his respective interest. This method of operation continued with the income being divided in accordance with the interest owned by each in the Melton lease and the expenses being paid in accordance with the same ratio. Rankin operated the lease, preparing invoices, billing the interest owners, and making bank deposits. From this account, he drew a check for $200 a month as compensation for managing the lease. The parties met from time to time to consider the operation of the Melton lease.

On May 21, 1974, the second well on the Melton lease was completed, at which time a joint bank account with everyone having authority to write checks on it was established. The account was called the "Melton Lease Account".

Rankin admitted that one of the maps he used to sell the deal to plaintiffs had circled in red a location of the Orsak lease and had printed next to it the word, "location". Dr. Naftalis testified that after the second well was drilled on the Melton lease, plaintiffs had discussions with Rankin concerning the acquisition of the Orsak lease, and Rankin

agreed he would get the Orsak lease for the group when he found Mr. Orsak was in the right mood. Such discussions continued after August 21, 1974, the date Rankin obtained the Orsak lease in his name.

Lisle confirmed the testimony of Dr. Naftalis that Rankin told the group that he would obtain the Orsak lease for all the parties, and in their names.

Each of the other plaintiffs testified that after August 21, 1974, when asked about the Orsak lease, Rankin would tell them that Mr. Orsak was difficult to deal with, for them to leave Orsak alone and that he, Rankin, would get the lease for them.

We must first determine whether a fiduciary relation existed.

■ The parties jointly considered and discussed the proper development of the Melton lease. Rankin admitted that the parties were jointly engaged in the production of oil from the Melton lease, sharing income and expenses in accordance with their ownership interests. The jury confirmed such facts in answer to the first special issue.

The court in *Holcombe v. Lorino,* 124 Tex. 446, 79 S.W.2d 307 (1935), stated:

". . . The general rule with respect to joint adventures is stated in 33 C.J. p. 841, as follows:

'A joint adventure has been aptly defined as a "special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation." '

"The rule is also defined in 25 Texas Jurisprudence, pp. 159 and 160, in the following language: 'It is constituted by a special combination of persons in the nature of a partnership—more particularly, a limited or special partnership—engaged in the joint prosecution of a particular transaction for mutual benefit of profit.' "

The Court in *Johnson v. Peckham,* 132 Tex. 148, 120 S.W.2d 786 (1938), while considering fiduciary obligations said:

". . . no distinction can be drawn between the duties owing by partners and those owing by joint adventurers. *Thompson et al. v. Duncan,* Tex.Com. App., 44 S.W.2d 904; *Paddock v. Bray,* 40 Tex.Civ.App. 226, 88 S.W. 419; *Griffin v. Reilly et al.,* Tex.Civ.App., 275 S.W. 242; *Meinhard v. Salmon* [249 N.Y. 458, 164 N.E. 545], supra."

In *Fitz-Gerald v. Hull,* 150 Tex. 39, 237 S.W.2d 256 (1951), the court stated:

" 'The relationship between joint adventurers, like that existing between partners, is fiduciary in character, and imposes upon all the participants the obligation of loyalty to the joint concern and of the utmost good faith, fairness, and honesty in their dealings with each other with respect to matters pertaining to the enterprise. This is especially true of those to whom the conduct of the transaction, or the property involved therein, is intrusted. Such a party will be regarded as a trustee and will not be permitted to enjoy any unfair advantage because of his possession or control of the joint property. The mere fact that his is intrusted with the rights of his coadventurers imposes on him the duty of guarding their rights equally with his own, and he is required to account strictly to his coadventurers; and if he is recreant to his trust, any rights they may be denied are recoverable.' 30 Am.Jur. 'Joint Adventurers,' p. 695, Sec. 34.

'Persons engaged in a joint adventure, or about to assume such relationship, owe to each other the utmost good faith and the most scrupulous honesty. *Lind v. Webber,* 36 Nev. 623, 134 P. 461, 135 P. 139, 141 P. 458, 50 L.R.A.,N.S., 1046, Ann. Cas.1916A, 1202.' "

We hold special issue one established that the parties were engaged in a joint venture and, therefore, a fiduciary relationship existed as to the Melton lease. *Fitz-Gerald v. Hull,* supra; *Maykus v. First City Realty and Financial Corporation,* 518 S.W.2d 887 (Tex.Civ.App.-Dallas 1974, no writ).

■ Rankin argues that if in fact a fiduciary relationship did exist as to the Melton

lease, such relationship terminated because of disagreements and controversies that arose between the parties during the drilling of the two wells on the lease. We disagree.

The court in *Johnson v. Peckham,* supra, said:

"When persons enter into fiduciary relations each consents, as a matter of law, to have his conduct towards the other measured by the standards of the finer loyalties exacted by courts of equity. That is a sound rule and should not be whittled down by exceptions. If the existence of strained relations should be suffered to work an exception, then a designing fiduciary could easily bring about such relations to set the stage for a sharp bargain . . ."

Although strained relations may have existed between the parties, the joint venture had not been terminated prior to August 21, 1974. Therefore, the fiduciary relationship existed at the time Rankin obtained the Orsak lease in his name.

The jury found in special issue three Rankin agreed to obtain the Orsak lease for himself and the plaintiffs after drilling began on the Melton lease and before he obtained the Orsak lease. Appellants urge this finding together with the existence of the fiduciary relationship creates in their favor a constructive trust, and thus avoids the application of the Statute of Frauds, Section 26.01, Tex.Bus. & Com.Code, Ann., and the Texas Trust Act, Art. 7425b–7. We agree.

■ Our courts apply the rule that for a constructive trust to arise there must be a fiduciary relationship before and apart from the agreement made the basis of the suit. *Meadows v. Bierschwale,* 516 S.W.2d 125 (Tex.1974); *Consolidated Gas & Equipment Co. v. Thompson,* 405 S.W.2d 333 (Tex. 1966); and *Tyra v. Woodson,* 495 S.W.2d 211 (Tex.1973).

■ The Texas Trust Act does not prohibit the enforcement of a constructive trust, *Fitz-Gerald v. Hull,* supra; *Omohundro v. Matthews,* 161 Tex. 367, 341 S.W.2d 401 (1960), nor is the imposition of a constructive trust a violation of the Statute of Frauds. *Omohundro v. Matthews,* supra; *Dorbandt v. Bailey,* 453 S.W.2d 205 (Tex. Civ.App.-Tyler 1970, writ ref. n. r. e.); *Burket v. Delaware Drilling Corporation,* 435 S.W.2d 307 (Tex.Civ.App.-El Paso 1968, writ dism'd).

Rankin argues that the finding of the jury to special issue three is at most only a finding there was an oral agreement to create an express trust or to convey an interest in real property. He cites *Consolidated Gas and Equipment Company of America v. Thompson,* supra; *Tyra v. Woodson,* supra; *Rogers v. Winn,* 329 S.W.2d 319 (Tex.Civ.App.-San Antonio 1959, writ ref. n. r. e.); and *Karnei v. Davis,* 409 S.W.2d 439 (Tex.Civ.App.-Corpus Christi 1966, no writ), for the proposition that such oral agreement violates the Statute of Frauds and the Texas Trust Act. The cited cases are distinguishable because in those cases there was no fiduciary relationship before and apart from the agreement made the basis of the suit.

*Smith v. Bolin,* 261 S.W.2d 352 (Tex.Civ. App.-Fort Worth 1953, affirmed in part and reversed and remanded in part), 153 Tex. 486, 271 S.W.2d 93 (1954), and 294 S.W.2d 280 (Tex.Civ.App.-Fort Worth 1956, writ ref. n. r. e.), cited by Rankin is also distinguishable from the case at bar. In *Smith* a fiduciary relationship may have existed but there was no agreement to acquire additional properties for the benefit of all.

■ We hold the jury findings establish a fiduciary relationship (the joint venture) before and apart from the agreement (to obtain the Orsak lease for parties) made the basis of this suit, and thus justify the imposition of a constructive trust on the Orsak lease. Neither the Statute of Frauds nor the Texas Trust Act present an obstacle to its imposition.

Rankin argues the jury's answers to the following special issues defeat appellants' right of recovery.

"SPECIAL ISSUE NO. 4

Do you find from a preponderance of the evidence that the relationship on August 21, 1974, between plaintiffs and defendant was such that plaintiffs were justified in believing that the defendant would act in the mutual interest of the plaintiffs and the defendant?

Answer: 'We do' or 'We do not.'

ANSWER: 'We do not.'

SPECIAL ISSUE NO. 5

Do you find from a preponderance of the evidence that defendant in acquiring the Orsak Lease for himself amounted to an abuse of the relationship inquired about in Special Issue No. 4?

Answer: 'We do,' or 'We do not.'

ANSWER: 'We do not.'

SPECIAL ISSUE NO. 6

Do you find from a preponderance of the evidence that defendant's failure to inform the following plaintiffs before August 21, 1974, of his intention to acquire the Orsak Lease for himself amounted to an abuse of the relationship inquired about in Special Issue No. 4?

Answer: 'We do,' or 'We do not,' by the name of the following plaintiffs:

RICHARD C. MARTIN: 'We do not.'
JEROME M. NAFTALIS: 'We do not.'
GENE S. FRIEDMAN: 'We do not.'

. . . . .

SPECIAL ISSUE NO. 8

Do you find from a preponderance of the evidence that defendant's failure, if any, to inform Tooker Lisle before August 21, 1974, of his intention to acquire the Orsak Lease for himself amounted to an abuse of the relationship inquired about in Special Issue No. 4?

Answer: 'We do,' or 'We do not.'

ANSWER: 'We do not.'

SPECIAL ISSUE NO. 9

Do you find from a preponderance of the evidence that the acquisition of the Orsak Lease by Robert Rankin was occasioned solely by information obtained in the drilling of the two wells on the Melton?

Answer: 'We do,' or 'We do not.'

ANSWER: 'We do not.' "

Appellants urge the issues are not material and do not defeat their right of recovery. They argue the negative responses are not findings that no fiduciary relationship existed between the parties and contend that once the fiduciary relationship is established, it cannot be impeached or destroyed, because a jury failed to find that appellants were justified in believing that Rankin would act in the mutual benefit of the parties or that Rankin's acts amounted to an abuse of the relationship.

The responses to special issues, 4, 5, 6, 8, and 9 cannot be interpreted as findings that the fiduciary relationship did not exist.

As stated by the court in *C. & R. Transport, Inc. v. Campbell,* 406 S.W.2d 191 (Tex. 1966):

"The Court of Civil Appeals treated the negative answer to issue 15 as a finding by the jury that the plaintiff did not drive his pickup from the shoulder of the highway onto the highway immediately prior to the collision. That is a misinterpretation of the issue and the answer. Properly interpreted, the answer is nothing more than a failure or refusal by the jury to find from a preponderance of the evidence that the plaintiff did drive his pickup from the shoulder onto the highway immediately prior to the collision, and means, in law, that the defendant failed to carry its burden of proving the fact. See *Usher v. Gwynn,* Tex.Civ.App., 375 S.W.2d 564, 565, holding approved, *Ashley v. Usher,* Tex.Sup., 384 S.W.2d 696, 697 (1964)."

In *Johnson v. Peckham,* supra, the defendant contended that although he and the plaintiffs had been partners during negotiations and the sale made the basis of the lawsuit, prior dissension had led to strained relations which in effect destroyed the fiduciary relationship between them. He sought to submit issues to establish the

absence of the fiduciary relationship. The Supreme Court affirmed the trial court's refusal to submit the issues saying, as we have previously quoted in part:

"When persons enter into fiduciary relations each consents, as a matter of law, to have his conduct towards the other measured by the standards of the finer loyalties exacted by courts of equity. That is a sound rule and should not be whittled down by exceptions. If the existence of strained relations should be suffered to work an exception, then a designing fiduciary could easily bring about such relations to set the stage for a sharp bargain.

. . . . .

The absolute duty to disclose was upon Peckham. The parties were not dealing with each other at arm's length, *and the issue of whether Johnson relied upon Peckham to discharge his high duty was not a material inquiry.* The trial court, we conclude, did not err in refusing to submit to the jury the special issues requested by defendant in error Peckham." (Emphasis added)

■ Whether appellants were justified in believing that Rankin would act in their mutual interest or whether the jury failed to find that Rankin's actions amounted to an abuse of the relationship between the parties is not material in view of the existing fiduciary relationship. Rankin had the burden of establishing the "fairness" of the transaction to the appellants. *Allen v. Great Liberty Life Insurance Company,* 522 S.W.2d 247 (Tex.Civ.App.-Eastland 1975, writ ref. n. r. e.); see also, *Stephens County Museum, Inc. v. Swenson,* 517 S.W.2d 257 (Tex.1974).

We hold the responses to these issues furnish no basis for judgment. They neither destroy the established fiduciary relationship nor establish that Rankin discharged his duty as a fiduciary.

Rankin pled and the jury found estoppel by silence against the appellants. The court in *Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929 (1952) said:

" . . . 'In order to constitute an equitable estoppel or estoppel in pais there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to this prejudice.' 31 C.J.S., Estoppel, § 67, page 254. Also, 'Before an estoppel can be raised there must be certainty to every intent, and the facts alleged to constitute it are not to be taken by argument or inference. Nothing can be supplied by intendment . . .' "

In the early case of *Burleson v. Burleson,* 28 Tex. 383 (1866), the rule was stated: "The effect of an estoppel in pais is to prevent the assertion of an unequivocal right, or preclude a good defense, and justice demands that it should not be enforced unless substantiated in every particular. (12 Barb., 1287.) The ground upon which the estoppel proceeds is fraud, actual or constructive, on the part of the person sought to be estopped. What will amount to the suggestion of a falsehood, or the suppression of the truth, may be difficult to determine in all cases; but some turpitude, some inexcusable wrong, that constituted the direct motive, or induced the outlay or purchase, is necessary to give silence or acquiescence the force of an estoppel in pais. Hence, the ignorance of the true state of the title on the part of the purchaser must concur with willful misrepresentation or concealment on the part of the person estopped."

"The true doctrine is well expressed in Story's Eq., § 386. In order to apply an estoppel, it is indispensable that the party standing by and concealing his rights should be fully apprized of them, and should, by his conduct or gross neglect, encourage or influence the purchaser; for if he be wholly ignorant of his rights, or

the purchaser know them, or if his acts, silence, or negligence do not mislead or in any manner affect the transaction, there can be no just inference of actual or constructive fraud on his part. Rights can be lost or forfeited only by such conduct as would make it fraudulent and against conscience to assert them."

It is stated in *Barfield v. Howard M. Smith Company of Amarillo,* 426 S.W.2d 834 (Tex.1968) as follows:

"There can be no estoppel when the party claiming the estoppel 'conducts himself with careless indifference to means of information reasonably at hand or ignores highly suspicious circumstances which should warn him of danger or loss.' 31 C.J.S. Estoppel § 71b, page 435; *City of Tyler v. Bruck* (Tex.Civ.App., 1954), 267 S.W.2d 429, writ ref. n. r. e."

Appellants urge that there is no evidence to support essential elements of the defensive theory. We agree.

The court in *Concord Oil Company v. Alco Oil and Gas Corporation,* 387 S.W.2d 635 (Tex.1965), included the following:

" 'The burden of proving an estoppel, and the essential elements thereof, is on the party asserting it.' 31 C.J.S. Estoppel § 160a, p. 765.

'Estoppel is ordinarily regarded as affirmative matter; and under the rule that he who has the affirmative of the issue has the burden of proof, a party who claims, asserts, or invokes, or who alleges and relies on, an estoppel has the burden of establishing it, or all of the facts or elements necessary to constitute it, or the grounds on which it rests, and the failure to prove any one or more of the elements constituting an estoppel has been declared to be fatal. The opponent of the party relying on an estoppel is not required to show the absence of any of its component elements.' Idem pp. 765–767."

The court in *Barfield v. Howard M. Smith Company of Amarillo,* supra, said:

"Silence can be the basis for an estoppel, where there is ·a duty to speak. *Burnett*

*v. Atteberry,* 105 Tex. 119, 145 S.W. 582 (1912). The burden of proving an estoppel and the essential elements thereof is on the party asserting it and the failure to prove any one or more of the elements is fatal. *Concord Oil Co. v. Alco Oil & Gas Corp.,* Tex.Sup., 387 S.W.2d 635 (1965); *Grinnan v. Dean,* 62 Tex. 218 (1884)."

"A party claiming an estoppel must have used due diligence to ascertain the truth of the matters upon which he relies in acting to his detriment. *Champlin Oil & Refining Co. v. Chastain,* Tex.Sup., 403 S.W.2d 376 (1965); *Houston & T. C. R. Co. v. Paris Milling Co.* (Tex.Civ.App., 1922), 240 S.W. 638, no writ. One of the requirements of estoppel is that the party claiming the estoppel was without knowledge, or the means of acquiring knowledge, of the facts which the party to be estopped is alleged to have represented by his acts, conduct or silence. *Richey v. Miller,* 142 Tex. 274, 177 S.W.2d 255 (1944); *Page v. Arnim,* 29 Tex. 53 (1867); *Hunt v. W. O. W. Life Ins. Soc.* (Tex.Civ. App., 1941), 153 S.W.2d 857, writ refused. '[W]here the real facts were known to a person or were open for his convenient ascertainment, he was not justified in relying on representation pertaining thereto and he cannot effectively say that he was misled or deceived by such representations.' 31 C.J.S. Estoppel § 71b, page 433. See also *Grinnan v. Dean,* 62 Tex. 218 (1884); *Logan v. Aiken* (Tex.Civ. App., 1939), 123 S.W.2d 401, writ dismissed, judgment correct."

■ There is no showing of any fraud or misrepresentation by appellants which would prevent Rankin from knowing the legal effect of his obtaining the Orsak lease during the existence of the fiduciary relationship between the parties. Rankin could have made inquiry of appellants as to their acquiescence in his individually obtaining the Orsak lease. The record fails to show any act of appellants which prevented Rankin from knowing the truth about their acquiescence.

Rankin, having the burden of showing that the essential elements of estoppel are present must show that any representation or concealment of a material fact by appellants was without his knowledge or the means of acquiring knowledge of such fact. Rankin has failed to make such a showing.

The trial court erred in sustaining Rankin's motion to disregard special issues one and three and the jury's findings in response thereto, and failing to enter a judgment imposing a constructive trust in favor of appellants to the extent of an undivided three-fourths interest in the Orsak lease.

The judgment is reversed and rendered that Naftalis, Martin, Friedman and Lisle have title to an undivided three-fourths interest in the Orsak lease. Appellants' proportionate ownership in the Orsak lease shall be the same as their respective ownership in the Melton lease.

■ By cross-point Rankin urges that if appellants be awarded an interest in the Orsak lease, their recovery should be reduced by their proportionate share of the costs incurred by Rankin in acquiring, drilling, developing, equipping, operating and producing such lease. Appellants in their pleadings expressed their willingness to pay such sums as may be determined by the evidence to be equitable. We are unable to determine those costs with exactness from the record. We, therefore, reverse and remand for determination the proportionate share of costs to be borne by Naftalis, Martin, Friedman and Lisle. Rule 434, T.R. C.P.; *National Life and Accident Insurance Company v. Blagg,* 438 S.W.2d 905 (Tex. 1969).

The judgment is reversed and rendered in part and is reversed and remanded in part.

## ON MOTION FOR REHEARING

WALTER, Justice (dissenting).

I respectfully dissent. Special Issues Number 4, 5, 6, 8 and 9 and the jury's answers are copied in the majority opinion and reference is made to them.

Plaintiffs pleaded a fiduciary relationship existed between them and the defendant and defendant abused that relationship in acquiring the Orsak Lease for himself.

The answers to the issues referred to constitute a finding defendant did not abuse his relationship with plaintiffs. I would grant the motion for rehearing and affirm the judgment.