**CONSOLIDATED GAS & EQUIPMENT COMPANY OF AMERICA, Petitioner,**

v.

**H. M. THOMPSON et al., Respondents.**

**No. A–11235.**

Supreme Court of Texas.

July 20, 1966.

Clayton, Kolander, Moser & Templeton, Amarillo, for petitioner.

Hugh L. Umphres, Jr., Gibson, Ochsner, Harlan, Kinney & Morris, Amarillo, Frank Dove, Panhandle, for respondents.

GREENHILL, Justice.

This is an action in which H. M. Thompson, D. A. Griffith, and C. A. Griffith seek to impose a constructive trust upon an oil and gas lease in order to obtain their asserted rights in a ⅟₁₆th overriding interest in ⅞ths of the oil and gas produced from the land covered by the lease. The alleged agreement for the royalty interest was oral; and, assuming its existence, the defense was that the agreement was unenforceable because of the Statute of Frauds[1] and the Texas Trust Act.[2]

Trial was to a jury which answered the issues, set out below, in favor of the plaintiffs. The judgment declared the existence of a constructive trust and awarded the plaintiffs $16,000, the value of the production attributable to the overriding royalty up to the time of the judgment. The Court of Civil Appeals sitting at Amarillo affirmed. 397 S.W.2d 260.

Except for testimony regarding the amount and value of the oil produced, only two witnesses testified. They were the plaintiffs, D. A. Griffith, and his father, C. A. Griffith. L. B. Newman, president of the defendant corporation with whom the plaintiffs dealt, died before the trial; so the defendant corporation could not, or did not, offer any testimony.

D. A. Griffith, 36 years of age, testified that his father had had some previous dealings with L. B. Newman, president of the defendant corporation; that Newman had told his father that he [Newman] still wanted more leases, particularly those located adjacent to production. D. A. Griffith knew about an unleased section of land near production; so he and his father went to see Newman. Both the Griffiths testified to an oral agreement to this effect: D. A. Griffith would tell Newman where the land was, and would permit the company's geologists to check it. If Newman wanted it, D. A. Griffith would obtain the lease and assign it to the defendant corporation, with Griffith retaining a ⅟₁₆th overriding royalty; and the defendant company would "drill it." He testified, "It was that simple."

D. A. Griffith testified that he could not get the lease fast enough; so it was agreed that the plaintiff, H. M. Thompson, who then worked for the defendant corporation, would obtain the lease.

Griffith said that he agreed to give Thompson a ⅓rd interest in his ⅟₁₆th for Thompson's procuring the lease. The plaintiffs introduced a written instrument attesting that D. A. Griffith, C. A. Griffith and H. M. Thompson agreed that Thompson would acquire the lease "for Consolidated Gas and Equipment Company of America under the direction of L. B. Newman. * * *" It was agreed that the two Griffiths and Thompson would divide equally the ⅟₁₆th overriding royalty. The instrument further recited that this agreement was made under a "promissory agreement"

---

1. Articles 3995 and 3995a.

2. Article 7425b-7. All references to statutes herein are to Vernon's Annotated Texas Civil Statutes.

by Newman to pay D. A. Griffith, C. A. Griffith and H. M. Thompson a ⅟₁₆th override growing out of the lease. The instrument was tendered for the purpose of showing the subsidiary agreement, and was not offered or admitted for the purpose of showing the agreement between Newman and the plaintiffs. Thompson did obtain the lease in the name of defendant Consolidatd Gas and Equipment Company of America. There is no suggestion that Thompson had agreed to take the lease in the name of any or all the plaintiffs. There was no breach of trust in obtaining the lease in the name of the defendant corporation.

C. A. Griffith gave testimony which was substantially the same as that of his son. He said he had had some previous dealings with Newman, but he did not elaborate except to say this:

"Then the boy [D. A. Griffith] asked Mr. Newman what kind of deal he would give him on that kind of leases, asked him definitely if he would give him the same kind of deal that he had been giving me to acquire leases there for him, and he said he would, which was a one-sixteenth overriding royalty of the producers' seven-eighths."

C. A. Griffith testified that he suggested that he have the agreement drawn up by his attorney but that Mr. Newman told him that would not be necessary, that he would have his bookkeeper draw up the contract and assignment. He testified that "I had all the confidence in the world in the man [Newman], otherwise we would have gone ahead and had our lawyer draw up the contract."

The only other testimony with regard to trust and confidence came from D. A. Griffith. He was asked on direct examination about his state of mind in dealing with Newman. He stated, "I trusted him, sir." He further testified that he had relied on Newman's representations that he would execute an assignment of the overriding royalty but that Newman did not do so. He testified

that Newman made various excuses for not doing so, such as that the lease was not producing enough oil to pay out in a hundred years, and that he was having difficulty getting pipeline connections.

There was some suggestion that D. A. Griffith would pay whatever bonus was necessary to obtain the lease, but he also testified that Newman would lend him the money for the bonus and would be repaid out of Griffith's share of the overriding royalty payments. There was no testimony that either of the Griffiths paid any of the bonus or that any of the plaintiffs paid any money for the lease, made any improvements on the lease, or occupied it after it was obtained.

The lease was obtained by Thompson for the defendant corporation which drilled a productive well on it, and this suit resulted when the corporation declined to execute an assignment of the overriding royalty to the plaintiffs or to account to them for any proceeds.

None of the plaintiffs had a real estate dealer's license or a license to deal in securities. D. A. Griffith was a guard at the Pantex Company. C. A. Griffith testified that his occupation was "chiropractor and magnetic masseur." Upon a former trial the district court instructed a verdict for the defendant. That trial court was of the view that this was a suit to recover a commission by the plaintiffs as real estate brokers and that the plaintiffs were not entitled to recover because they had no licenses. The court was of the further view that if there was a trust, it was an express trust and was unenforceable because it was not in writing. The Court of Civil Appeals sitting at Waco reversed that judgment and remanded the cause to the trial court. The Waco Court of Civil Appeals was of the opinion that the above facts were sufficient to raise an issue of fact as to whether there was a constructive trust. 378 S.W.2d 879. The case was not brought to this Court, and was retried under the opinion of the Waco Court of Civil Appeals. Upon this

trial, under the evidence above set out, the jury made the following findings:

(1) Newman was acting on behalf of the defendant Consolidated Gas and Equipment Company.

(2) Newman and D. A. Griffith entered into an oral agreement that if Griffith would reveal to Newman the location of the available land, and if the lease were acquired and production obtained, the plaintiffs would own a 1/16th of 7/8ths overriding royalty interest in production under the lease.

(3a) Pursuant to the agreement Griffith did reveal to Newman the location of the land.

(3b and 3c) "At said time and place D. A. Griffith had confidence in L. B. Newman" and "D. A. Griffith trusted L. B. Newman."

(4) The lease was acquired as a result of the oral contract.

The Statute of Frauds, Article 3995, provides in part that no action shall be brought in any court upon a contract for the sale of real estate or the lease thereof for a term longer than one year unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged. The overriding royalty in the oil and gas lease in question is such an interest in real estate as to fall within the Statute.

The Texas Trust Act, Article 7425b–7, provides in part that " * * * a trust in relation to or consisting of real property shall be invalid, unless created, established, or declared: (1) By a written instrument subscribed by the trustor or by his agent thereunto duly authorized in writing * * *." The overriding royalty here involved is also such an interest in real property as to fall within the Trust Act.

The Trust Act, however, states that it does not apply to a constructive or resulting trust. Article 7425b–2. Unless the testimony above set out creates a constructive trust, the plaintiffs cannot recover.

This Court has written several opinions on constructive trusts since the enactment of the Texas Trust Act, and it would serve no useful purpose to repeat the standards prescribed in those opinions for the creation or existence of a fiduciary relationship and a constructive trust. Thigpen v. Locke, 363 S.W.2d 247 (Tex.Sup.1962); Gaines v. Hamman, 163 Tex. 618, 358 S.W. 2d 557 (1962); Omohundro v. Matthews, 161 Tex. 367, 341 S.W.2d 401 (1960); Smith v. Bolin, 153 Tex. 486, 271 S.W.2d 93 (1954); and Fitz-Gerald v. Hull, 150 Tex. 39, 237 S.W.2d 256 (1951).

The fact that people have had prior dealings with each other and that one party subjectively trusts the other does not establish a confidential relationship. Thigpen v. Locke, supra. That opinion reasoned that "[b]usinessmen generally do trust one another, and their dealings are frequently characterized by cordiality * * *." The dissent in *Thigpen* recognized that fact; but took the view that over the long period of years, a relationship of financial advisor and confidante had arisen between a trust officer of a bank and his friend, a customer of the bank, which raised an issue of fact as to a confidential relationship.

Our holdings above cited are to the effect that for a constructive trust to arise there must be a fiduciary relationship before, and apart from, the agreement made the basis of the suit. Such is our holding here. As stated, the fact that one businessman trusts another, and relies upon his promise to carry out a contract, does not create a constructive trust. To hold otherwise would render the Statute of Frauds meaningless.

The usual cases of fiduciary relationship have been attorney-and-client, partners, close family relationships such as that of

parent-and-child, and joint adventurers, particularly when there is an agreement among the joint adventurers to share financial gains and losses. This Court in Gaines v. Hamman, supra, as well as in Thigpen v. Locke, supra, recognized that a fiduciary relationship could arise outside of those relationships listed above when, over a long period of time, the parties had worked together for the joint acquisition and development of property previous to the particular agreement sought to be enforced. The proof in this case simply does not show such a relationship of the parties as to come within the exceptions recognized in the *Gaines* and *Thigpen* opinions. There is no constructive trust.

■ The case here presented is one for breach of contract to convey an interest in realty. At most it presents an oral express trust under Fitz-Gerald v. Hull, supra. In either event, under the Statute of Frauds and the Texas Trust Act, the promise is not enforceable if not in writing. This one was not in writing, and the courts below erred in directing that it be enforced.

The judgments of the courts below are reversed, and judgment is here rendered that the plaintiffs take nothing.