Katie Bofysil MARUT et al., Appellants,

v.

J. Fuller COLLIER et al., Appellees.

No. B1910.

Court of Civil Appeals of Texas, Houston (14th Dist.).

June 13, 1979.

Rehearing Denied July 11th, 1979.

Brantly Harris, Prappas, Moncure, Harris & Termini, Houston, Norman Scott Thrash, Thrash, Williams & Dozier, Alvin, for appellants.

Preston Shirley, John Eckel, Mills, Shirley, McMicken & Eckel, Galveston, Sam Dawkins, Jr., Eastham & Meyer, Thomas H. Lee, Foreman, Dyess, Prewett, Rosenberg & Henderson, W. B. Wagner, R. W. Dye, Gail Eutsler, Houston, for appellees.

Before J. CURTISS BROWN, C. J., and CIRE and COULSON, JJ.

J. CURTISS BROWN, Chief Justice.

This was a suit in trespass to try title to determine the ownership of a certain three-fourths mineral interest in a tract of land referred to as Lot 25. The jury found in favor of the plaintiffs in answering special issues, but the trial judge granted the motions for judgment non obstante veredicto filed by the defendants.

The events giving rise to the current controversy began in the mid-1940's and center around four men who were members of the Houston Division of the American Rice Growers Cooperative Association and its two wholly owned subsidiaries, the Brazos Valley Rice Company and the American Canal Company. The three companies will be referred to collectively as the Association. George Bofysil, Sr. (Bofysil) and J. A. Segelquist (Segelquist) were members of the Association and were rice farmers. A. J. Eastham (Eastham) was a member of the Association and served as its attorney. J. F. Collier (Collier) was a member of the Association and was its comptroller and general manager. The Association, a non-profit organization, performed at that time three major tasks for its members: it acted as a leasing agent to procure farmlands; it acted as a marketing agent to sell the rice; and it aided in providing irrigation through canals. The Association did not purchase lands for farming, nor did it have the power or funds to do so. There were no restrictions on the ability of individual members or officers to buy or sell land.

In 1944 Eastham became interested in purchasing approximately 1500 acres of jointly owned real estate in Galveston County. Grace McDowell (McDowell) owned a three-quarters share, referred to as the McDowell interest, and the remaining one-quarter share, referred as the Watson interest, was owned by various other parties. Eastham approached McDowell concerning the purchase of her interest but received a negative answer. In 1945 Bofysil, who had a surface lease on a portion of that tract, interested Segelquist, who leased another portion, in attempting to purchase Lot 25. Segelquist agreed to buy the southern portion of Lot 25 if Bofysil bought the northern half. To that end, Bofysil approached Collier to obtain the name of the owner of the property. Bofysil knew Collier would have this information because, through the Association, Collier had arranged for Bofysil and Segelquist to lease the land. At Bofysil's request Collier wrote McDowell to ask if she would sell Lot 25. She was not willing to sell at that time, but indicated she might do so after a mineral lease expired.

Later, when disagreement arose between McDowell and the owners of the Watson interest as to the proper management of the properties, McDowell decided to sell her interest. She wrote to Collier asking if the Association would buy her interest in the entire property. Collier replied that the Association did not purchase land but that

he knew of two stockholders who were also large land owners and who might be interested in buying the McDowell interest. Collier and Eastham then purchased the McDowell interest, including the minerals, for $26.00 per acre and took title in A. J. Eastham as trustee. Eastham, as trustee, and the owners of the Watson interest then sold the northern portion of Lot 25 to Bofysil and the southern portion to Segelquist at $35.00 and $37.50 per acre, respectively. Eastham, as trustee, and the owners of the Watson interest reserved all of the minerals, except for a 1/64th non-participating royalty, which was conveyed to both Bofysil and Segelquist in their portions of Lot 25. The record title to the three-quarters mineral interest owned by Collier and Eastham remained in Eastham, as trustee, until 1971. At that time, Eastham, as trustee, conveyed the interest to Collier, who transferred one-half of that interest, or ⅜ths of the minerals in Lot 25, to Eastham's wife and children. Collier later conveyed one-half of his ⅜ths interest, or 3/16ths of the minerals in Lot 25, to his children.

In 1977, after mineral production had begun in the northern portion of Lot 25, Bofysil's widow, Katie Marut, and son, George Bofysil, Jr., brought this action in trespass to try title to the mineral interest in the northern portion of Lot 25. The defendants were Eastham and his assigns and Collier and his assigns. Segelquist intervened as party plaintiff and the Superior Oil Company interpled certain royalty payments into the registry of the court.

The Bofysils and Segelquist, as appellants herein, contend they were entitled to judgment on the jury's verdict in their favor. This case was tried on the theory that Collier owed fiduciary duties to both Bofysil and Segelquist; and that he breached those duties when he and Eastham concealed their ownership of Lot 25 and refused to convey the mineral interest to Bofysil and Segelquist in 1947, when the sale was closed. Because of this, and because Eastham allegedly "knew" about the agreement between Collier and Segelquist, appellants maintain they have equitable title to Lot 25 based on a constructive trust. The jury found that there was a confidential relationship between Collier and both Bofysil and Segelquist and that Eastham knew Collier had agreed to negotiate for the farmers in purchasing Lot 25 from McDowell. The jury also found that Collier and Eastham "concealed" their ownership from Bofysil and Segelquist until after the sale, and that the two farmers had "relied" on the concealment. The Easthams and the Colliers filed motions for judgment notwithstanding the verdict, which the trial court granted without specifying the reasons why the motions were granted.

■ In order for the appellants to have been entitled to a constructive trust in Lot 25, there must have been a fiduciary relationship, as defined in law, between Collier and the two farmers. In their motion for judgment notwithstanding the verdict and on appeal, the appellees have asserted that there was no evidence at trial of such relationship. In determining whether there is "no evidence" to support the findings of the jury as to the existence of a confidential relationship between Collier and the farmers, we must consider only the evidence and inferences which tend to support the finding of the jury and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.Sup.1965); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (Tex.Sup.1951).

The supreme court has repeatedly recognized that "confidential relationships may arise not only from the technical fiduciary relationships such as attorney-client, trustee-cestui que trust, partner and partner, etc.—which as a matter of law are relationships of trust and confidence—but may arise informally from 'moral, social, domestic or purely personal' relationships." *E. g., Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. Sup.1962). In *Thigpen*, the court further held that "mere subjective trust alone is not enough to transform arms-length dealing into a fiduciary relationship . . . ." The same reasoning was later applied in *Consolidated Gas & Equipment Co. v. Thompson*, 405 S.W.2d 333 (Tex.Sup.1966).

"There must be a fiduciary relationship before, and apart from, the agreement made the basis of the suit. . . . [T]he fact that one businessman trusts another, and relies upon his promise to carry out a contract, does not create a constructive trust." *Id.* at 336.

In the case at bar, the relationship between Collier and the two farmers, Bofysil and Segelquist, does not fall within any of those categories recognized as creating a fiduciary relationship. Collier, as general manager of the association, aided members in obtaining suitable lands for leasing, and had acted in that capacity for Bofysil and Segelquist. However, as noted in *Consolidated Gas, supra,* at 336, "that people have had prior dealings with each other and that one party subjectively trust the other does not establish a confidential relationship." There is no evidence to link Collier with Bofysil or Segelquist other than their relationship through the association. There is no evidence that Collier had worked together with Bofysil and Segelquist "over a long period of time" or that he had ever assisted them in purchasing other property. *Rankin v. Naftalis,* 557 S.W.2d 940, 945 (Tex.Sup. 1977). Absent some evidence meeting the requirement of a prior fiduciary relationship under the holdings of *Thigpen, Consolidated Gas,* and *Rankin,* there is no constructive trust.

Since there was no evidence of a fiduciary relationship between Collier and Bofysil and Segelquist, we need not consider the remaining points of error and express no opinion thereon. Likewise, since there was no evidence of a confidential relationship between Eastham and the two farmers, there is no constructive trust against the Eastham interest in the property.

The trial court's entry of judgment notwithstanding the verdict is affirmed.

Affirmed.

CIRE, J., not participating.