**WINCHESTER OIL COMPANY, et al., Appellants,**

**v.**

**Dale GLASS, et al., Appellees.**

**No. 9284.**

Court of Appeals of Texas, Texarkana.

Nov. 13, 1984.

Rex A. Nichols, Nichols, Merriman, Patterson & Allison, Longview, for appellants.

Austin Guest, Clarksville, Hardy Moore, Paris, for appellees.

CORNELIUS, Chief Justice.

Winchester Oil Company and Samuel Vaughn appeal from a judgment awarding

Dale Glass and A.V. Taylor a fifteen percent of seventy-five percent interest in an oil and gas lease pursuant to an oral agreement with Sam Vaughn, president of Winchester. The trial below was to the court, which entered findings of fact and conclusions of law. Winchester and Vaughn attack the sufficiency of the evidence to support the trial court's findings of (1) a memorandum sufficient to avoid the Statute of Frauds, (2) sufficient part performance by Glass to avoid the Statute of Frauds, and (3) facts sufficient to impose a constructive trust in favor of Glass and Taylor. We hold there is insufficient evidence to support the trial court's findings of a sufficient memorandum, of part performance, or of a constructive trust in favor of Glass, but that on the theory of unjust enrichment the evidence supports a recovery by Taylor of $11,386.34 paid to Winchester.

In November, 1978, Dale Glass owned a fifty percent interest in a well known as Fleming No. 1. Glass introduced himself to Sam Vaughn, and they agreed that in exchange for the use of Vaughn's mud pump on Fleming No. 1, Glass would assign Vaughn one-half of Glass' interest in the well. As it turned out, the well was never completed.

In December, 1978, Glass and Vaughn began building a drilling rig together. In February, 1979, they formed Taltex Drilling Company, a corporation with each owning one-half of the stock. Together they drilled a few wells as Taltex, using the rig they had built. In late July, 1979, Glass left Taltex to work for another drilling company.

During the time that Glass was helping Vaughn build the rig for Taltex in early 1979, he met with the owners of the Owings lease about acquiring the lease. Glass, Vaughn, and two others later met with the owners and negotiated an assignment of seventy-five percent of the lease to Winchester Oil, a company owned entirely by Vaughn. The drilling contract on the Owings heirs well was offered to Taltex by Vaughn, but Glass refused, claiming that the Taltex rig was incapable of drilling the well.

There were written assignments of interests in the well from Winchester to Vaughn, two other developers of the lease, and others, but there was never a written assignment of any interest to Glass.

Glass claims that by oral agreement he, Vaughn, and the two others were each to own one-fourth of the interest assigned to Winchester, with ten percent of each's interest being sold to finance the well. Glass admits he did not sell any interest in the well but contends his ten percent was sold for him by one of the two others.

Vaughn claims that Glass was only to earn an interest in the well by participating in the Taltex interest, which was offered but refused by Glass; by earning a commission on the sale of interests to finance the well; or by purchasing an interest.

Glass contributed no money toward the drilling of the well. In October, 1979, after it was known that the well would be a producer, Glass and his silent partner, A.V. Taylor, went to the well site. A truckload of tubing had been delivered to the well, and Taylor wrote a check to Winchester in an amount identical to the cost of the truckload of tubing, and gave it to Winchester's bookkeeper on behalf of Glass. Later, on Glass' advice, Taylor paid an additional $2,000.00 for him to Winchester. All the money paid to Winchester by Taylor was, according to Glass, paid for completion costs of the well. Receipts for the check and cash were given by Winchester's bookkeeper. The total amount paid by Taylor to Winchester was $11,386.34.

Glass and Taylor do not contest the applicability of the Statute of Frauds, or that the interest they seek to recover is an interest in real estate. They do contend that there was sufficient written memoranda to comply with the statute. They argue that Taylor's check for $9,386.34, which was endorsed by Sammy Vaughn, and on which Taylor had written "Owings Heirs No. 1 advance against completion tubing for well;" and two invoices/receipts given

by Vaughn's secretary constitute sufficient written memoranda.

The Texas Statute of Frauds, found in the Tex.Bus. & Com.Code Ann. § 26.01 (Vernon Supp.1984),[1] requires that, with respect to the agreements defined therein, there must be a written memorandum which is complete within itself in every material detail, and which contains all of the essential elements of the agreement, so that the contract can be ascertained from the writings without resorting to oral testimony. *Cohen v. McCutchin,* 565 S.W.2d 230 (Tex.1978); *Dunn v. Growers Seed Ass'n,* 620 S.W.2d 233 (Tex.Civ.App.— Amarillo 1981, no writ).

■ Here, even assuming that Winchester's bookkeeper had authority to ratify or sign contracts for it, or that Vaughn's endorsement of the check given by Taylor constituted sufficient signature or ratification, none of the memoranda contained the terms of the assignment. There is no way to determine the extent of the interest claimed by Glass or Taylor by reference to the writings. None of the checks or receipts mentions Glass' claimed ownership of fifteen percent of the seventy-five percent interest owned by Winchester Oil. Without such essential terms, the writings are insufficient to comply with the statute. *Pick v. Bartel,* 659 S.W.2d 636 (Tex.1983).

Glass argues in the alternative that he performed his part of the alleged agreement sufficiently to take it out of the Statute of Frauds. However, his testimony was that he owned an interest in the lease because he "found" it, and because he and Vaughn and the two others involved agreed to share equally in the lease. He admits he was the only one of the four who did not sell any interests to finance the well, but argues that his interests were sold for him. The only thing Glass did after the alleged agreement was reached was to tender money for the completion costs, and this was done *after* the well had been drilled and shown to be a producer.

■ In some cases, based on equitable considerations, an oral agreement is taken out of the Statute of Frauds where one party completely performs his part of the bargain. *Wynnewood State Bank v. Brigham,* 434 S.W.2d 874 (Tex.Civ.App.—Texarkana 1968, writ ref'd n.r.e.). But, to justify such equitable relief, the performance must constitute a serious change in position by the performing party in reliance upon the agreement and over and above the payment of consideration. *Cowden v. Bell,* 157 Tex. 44, 300 S.W.2d 286 (1957); *Taber v. Pettus Oil & Refining Co.,* 139 Tex. 395, 162 S.W.2d 959 (1942); *Truitt v. Wilkinson,* 379 S.W.2d 400 (Tex.Civ.App.-Texarkana, 1964, no writ).

■ Here, Glass did nothing which placed himself at risk, and nothing which could amount to a serious change in position in reliance upon the contract over and

---

**1.** Tex.Bus. & Com.Code Ann. § 26.01 (Vernon Supp.1984) provides:

(a) A promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is

(1) in writing; and

(2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.

(b) Subsection (a) of this section applies to:

(1) a promise by an executor or administrator to answer out of his own estate for any debt or damage due from his testator or intestate;

(2) a promise by one person to answer for the debt, default, or miscarriage of another person;

(3) an agreement made on consideration of marriage;

(4) a contract for the sale of real estate;

(5) a lease of real estate for a term longer than one year;

(6) an agreement which is not to be performed within one year from the date of making the agreement;

(7) a promise or agreement to pay a commission for the sale or purchase of:

(A) an oil or gas mining lease;

(B) an oil or gas royalty;

(C) minerals; or

(D) a mineral interest; and

(8) an agreement, promise, contract, or warranty of cure relating to medical care or results thereof made by a physician or health care provider as defined in Section 1.03, Medical Liability and Insurance Improvement Act of Texas. This section shall not apply to pharmacists.

above the payment of consideration. In fact, the only overt act which could be considered performance came after the risk had been assumed entirely by the other parties. Such "performance" is insufficient to avoid the statute.

■ Glass and Taylor also assert that their recovery is justified by the finding of a constructive trust in their favor. A constructive trust may be an appropriate equitable method for avoiding the effect of the Statute of Frauds and may be imposed where there is a fiduciary or confidential relationship between the parties to the oral agreement before, and apart from, the agreement. *Consolidated Gas & Equip. Co. v. Thompson*, 405 S.W.2d 333 (Tex. 1966); or where there has been actual fraud, *Ginther v. Taub*, 675 S.W.2d 724 (Tex.1984); *Meadows v. Bierschwale*, 516 S.W.2d 125 (Tex.1974). However, strict proof of the elements of a constructive trust is required, and the fact that parties have had prior dealings with each other and that one party trusts the other does not establish the confidential relationship that is required. That one businessman trusts another and relies on his oral agreement is not sufficient to establish a constructive trust. To hold otherwise would render the Statute of Frauds meaningless. *Consolidated Gas & Equip. Co. v. Thompson*, supra.

### (1) PRIOR FIDUCIARY RELATIONSHIP

■ Proof that the parties were engaged in a joint venture, without more, is insufficient to justify the imposition of a constructive trust. *Tyra v. Woodson*, 495 S.W.2d 211 (Tex.1973); *Consolidated Gas & Equip. Co. v. Thompson*, supra. The parties must have had a fiduciary or confidential relationship separate from and predating the agreement giving rise to the lawsuit, and the oral agreement sought to be enforced must also be within *the scope of the duties* arising from the prior relationship. *Rankin v. Naftalis*, 557 S.W.2d 940 (Tex.1977).

■ Vaughn and Glass had no prior relationship in which they jointly owned an interest in a mineral lease apart from their joint ownership or use of a drilling rig. Their prior relationships involved only the drilling company and a drilling rig. Because the alleged impropriety here—i.e., the breach of an oral agreement to convey an interest in a lease—was outside the scope of the prior relationships, it will not give rise to a constructive trust.

■ Another factor militating against the imposition of a constructive trust here is that Glass' only contribution to the venture was to get his silent partner Taylor to give money to the well *after* the well had been drilled as a producer, and after the risks had been taken by Vaughn and the other two developers. Such lack of risk taking undercuts the beneficiary's equitable foundation. *Rankin v. Naftalis*, supra; *Vaquero Petroleum Co. v. Simmons*, 636 S.W.2d 762 (Tex.App.—Corpus Christi 1982, no writ). For these and other reasons, we find the evidence legally and factually insufficient to support a finding of a confidential relationship sufficient to justify the imposition of a constructive trust.

### (2) ACTUAL FRAUD

■ The trial court found that Vaughn's retention of the money paid by Taylor was a fraud on Taylor and Glass, and Vaughn and Winchester have attacked that finding by their Point of Error No. 3. After reviewing all the evidence, we cannot say that the court's findings and conclusions regarding actual fraud in the retention of the money by Vaughn are legally or factually insufficient. *Ginther v. Taub*, supra; *Meadows v. Bierschwale*, supra; *Fitz-Gerald v. Hull*, 150 Tex. 39, 237 S.W.2d 256 (1951); *Harris v. Sentry Title Co.*, 715 F.2d 941 (5th Cir.1983); Restatement of Restitution § 160 (1937). Glass and Taylor claimed a constructive trust and their pleadings also sought an accounting from Winchester and Vaughn. Since we have found the constructive trust remedy inapplicable, but we do find sufficient evidence to support the court's finding that

the retention of Taylor's money by Vaughn would be inequitable, Vaughn should repay the money under the principles of unjust enrichment. *Fitz-Gerald v. Hull,* supra.

The judgment of the trial court is modified to provide that Glass and Taylor take nothing on their suit for an interest in the lease, and that Taylor recover the sum of $11,386.34. As modified the judgment is affirmed.

BLEIL, Justice, dissenting.

I agree with the majority's decision that Glass and Taylor should take nothing on the basis of the suit which they filed. And, I agree that it might be inequitable for Taylor to lose the $11,386.34 which the evidence shows he advanced. However, I would reverse and render a take nothing judgment rather than modify the judgment based upon an improper search of the record for inequities.

Taylor did not ask the court, based upon equitable grounds or otherwise, to return to him the money he advanced. He did not seek recovery of this money either as a primary part of his suit or on an alternative basis. No point of error or cross-point of error concerns this matter. Therefore, I believe the action of this Court in modifying the judgment to direct the return of the money to Taylor is erroneous.

Ordinarily we cannot consider points raised for the first time on appeal. *Gray-Taylor, Inc. v. Tennessee,* 587 S.W.2d 668 (Tex.1979); *Socony-Vacuum Oil Co. v. Aderhold,* 150 Tex. 292, 240 S.W.2d 751 (1951). Nor may we consider a point not properly presented by point of error. Tex. R.Civ.P. 418(d). Fundamental error is a rarity and our consideration of unassigned errors, absent jurisdictional defects, is amiss. *Eagle Trucking Co. v. Guin,* 640 S.W.2d 873 (Tex.1982); *American Gen. Fire & Cas. Co. v. Weinberg,* 639 S.W.2d 688 (Tex.1982). Fundamental error in civil cases has been labeled a discredited doctrine. *Cox v. Johnson,* 638 S.W.2d 867 (Tex.1982).

The lawsuit sought (1) recovery of an interest in land, (2) damages, and (3) an accounting and rentals. The trial court did not have authority to return money on a theory wholly unsupported by the pleadings. That suit was not tried. That case was not appealed.

The majority's award of money not sought by the plaintiffs, on a theory not pled in the trial court or presented to this Court either by point of error or in argument, constitutes error of the most fundamental type.